**SHAKED LAW GROUP, P.C.**
Dan Shaked, Esq.
14 Harwood Court, Suite 415
Scarsdale, NY 10583
Tel. (917) 373-9128
Email: ShakedLawGroup@gmail.com
*Attorneys for Plaintiff and the Class*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
RASHETA BUNTING, Individually and as the
representative of a class of similarly situated persons,

                                        Case No. 25-cv-193

                Plaintiff,

        - against -

THERAPIE MEDICAL (US) INC.,

              Defendant.
-----------------------------------------------------------X

## COMPLAINT – CLASS ACTION

### INTRODUCTION

1. Plaintiff, Rasheta Bunting ("Plaintiff" or "Bunting"), brings this action on behalf of herself and all other persons similarly situated against Therapie Medical (US) Inc. (hereinafter "Therapie" or "Defendant"), and states as follows:

2. Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content using her computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision; others have no vision.

3. Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind, and according to

1

the American Foundation for the Blind's 2015 report, approximately 400,000 visually impaired persons live in the State of New York.

4. Plaintiff brings this civil rights action against Therapie for their failure to design, construct, maintain, and operate their website to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired persons. Defendant is denying blind and visually-impaired persons throughout the United States with equal access to the goods and services Therapie provides to their non-disabled customers through http//:www.therapieclinic.com/us (hereinafter "therapieclinic.com/us" or "the website"). Defendant's denial of full and equal access to its website, and therefore denial of its products and services offered, and in conjunction with its physical locations, is a violation of Plaintiff's rights under the Americans with Disabilities Act (the "ADA").

5. Therapieclinic.com/us provides to the public a wide array of the goods, services, price specials, employment opportunities and other programs offered by Therapie. Yet, therapieclinic.com/us contains thousands of access barriers that make it difficult if not impossible for blind and visually-impaired customers to use the website. In fact, the access barriers make it impossible for blind and visually-impaired users to even complete a transaction on the website. Thus, Therapie excludes the blind and visually-impaired from the full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living. In the wave of technological advances in recent years, assistive computer technology is becoming an increasingly prominent part of everyday life, allowing blind and visually-impaired persons to fully and independently access a variety of services.

6. Plaintiff visited Defendant's website for purposes of making a purchase. However, Plaintiff is also an advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of asserting her civil rights and monitoring, ensuring, and determining

whether places of public accommodation and/or their websites and apps are in compliance with the ADA.

7. The blind have an even greater need than the sighted to shop and conduct transactions online due to the challenges faced in mobility. The lack of an accessible website means that blind people are excluded from experiencing transacting with defendant's website and from purchasing goods or services from defendant's website.

8. Despite readily available accessible technology, such as the technology in use at other heavily trafficked retail websites, which makes use of alternative text, accessible forms, descriptive links, resizable text and limits the usage of tables and JavaScript, Defendant has chosen to rely on an exclusively visual interface. Therapie's sighted customers can independently browse, select, and buy online without the assistance of others. However, blind persons must rely on sighted companions to assist them in accessing and purchasing on Therapieclinic.com/us.

9. By failing to make the website accessible to blind persons, Defendant is violating basic equal access requirements under both state and federal law.

10. Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons. Similarly, New York state law requires places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

11. Plaintiff browsed and intended to book the Botox Treatment for herself for December 30, 2024, buy a package of the Hydrafacial treatments, and purchase the Antioxidant Gel Cleanser on Therapieclinic.com/us. However, unless Defendant remedies the numerous

access barriers on its website, Plaintiff and Class members will continue to be unable to independently navigate, browse, use, and complete a transaction on Therapieclinic.com/us.

12. Because Defendant's website, Therapieclinic.com/us, is not equally accessible to blind and visually-impaired consumers, it violates the ADA. Plaintiff seeks a permanent injunction to cause a change in Therapie's policies, practices, and procedures to that Defendant's website will become and remain accessible to blind and visually-impaired consumers. This complaint also seeks compensatory damages to compensate Class members for having been subjected to unlawful discrimination.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181 *et seq*., and 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C. § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. See 28 U.S.C. § 133(d)(2).

14. This Court also has supplemental jurisdiction over pursuant to 28 U.S.C. § 1367, over Plaintiff's pendent claims under the New York State Human Rights Law, N.Y. Exec. Law, Article 15 (Executive Law § 290 *et seq*.) and the New York City Human Rights Law, N.Y.C. Administrative Code § 8-101 *et seq*. ("City Law").

15. Venue is proper in this District of New York pursuant to 28 U.S.C. §§ 1391(b)-(c) and 144(a) because Plaintiff resides in this District, Defendant conducts and continues to conduct a substantial and significant amount of business in this District, and a substantial portion of the conduct complained of herein occurred in this District.

16. Defendant is registered to do business in New York State and has been conducting business in New York State, including in this District. Defendant maintains Brick-and-mortar places of accommodation in this District which are subject to personal jurisdiction in this District. Defendant also has been and is committing the acts alleged herein in this District and has been and is violating the rights of consumers in this District and has been and is causing injury to consumers in this District. A substantial part of the act and omissions giving rise to Plaintiff's claims have occurred in this District.

## PARTIES

17. Plaintiff, is and has been at all relevant times a resident of Kings County, State of New York.

18. Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(l)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*, the New York State Human Rights Law and the New York City Human Rights Law. Plaintiff, Rasheta Bunting, cannot use a computer without the assistance of screen reader software. Plaintiff, Rasheta Bunting, has been denied the full enjoyment of the facilities, goods and services of Therapieclinic.com/us, as well as to the facilities, goods and services of Defendant's brick and mortar locations, as a result of accessibility barriers on Therapieclinic.com/us.

19. Defendant, Therapie Medical (US) Inc., is a Delaware foreign business corporation doing business in New York State.

20. Defendant owns and operates Therapie Clinics (hereinafter, "Therapie Clinics" or "Clinics"), which is a place of public accommodation. Therapie Clinics are located in New York State.

5

21. Therapie Clinics provide to the public important and enjoyable goods and services such as aesthetic and wellness experiences that include skin treatment, laser hair removal, injectables, and body treatment, amongst many other services as well as the ability to purchase skincare and beauty products. Defendant also provides to the public a website known as Therapieclinic.com/us which provides consumers with access to an array of goods and services offered to the public by the Therapie Clinics, including, the ability to learn about, book and purchase the products and services which are offered for sale with the click of a mouse. The Website also lets the visitor book services for specific date and time, make purchases, learn about promotions, and learn about Therapie Clinics and information about the Clinics' locations, and times of operation, among other features.  The inaccessibility of Therapieclinic.com/us has deterred Plaintiff from booking the Botox Treatment for herself for December 30, 2024, buying a package of the Hydrafacial treatments, and purchasing the Antioxidant Gel Cleanser.

22. Defendant's locations are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).  Defendant's website is a service, privilege, or advantage that is heavily integrated with Defendant's physical Clinics and operates as a gateway thereto.

## NATURE OF THE CASE

23. The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

24. The blind access websites by using keyboards in conjunction with screen-reading software which vocalizes visual information on a computer screen.  Except for a blind person whose residual vision is still sufficient to use magnification, screen access software provides the only method by which a blind person can independently access the Internet.  Unless

websites are designed to allow for use in this manner, blind persons are unable to fully access Internet websites and the information, products and services contained therein.

25. For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind user is unable to access the same content available to sighted users.

26. Blind users of Windows operating system-enabled computers and devises have several screen-reading software programs available to them. Job Access With Speech, otherwise known as "JAWS" is currently the most popular, separately purchase and downloaded screen-reading software program available for blind computer users.

27. The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0"). WCAG 2.0 are well-established guidelines for making websites accessible to blind and visually-impaired persons. These guidelines are universally followed by most large business entities and government agencies to ensure their websites are accessible. Many Courts have also established WCAG 2.0 as the standard guideline for accessibility. The federal government has also promulgated website accessibility standards under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them. These guidelines recommend several basic components for making websites accessible, including but not limited to: adding invisible alt-text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse, ensuring that image maps are accessible, and adding headings so that blind persons can easily navigate the site. Without these very basic components, a website will be inaccessible to a blind person using a screen reader.

**FACTUAL ALLEGATIONS**

28. Defendant operates Therapie Clinics in New York State and provides wellness experiences and massages, amongst other products and services.

29. Therapieclinic.com/us is a service and benefit offered by Therapie in New York State and throughout the United States and the world. Therapieclinic.com/us is owned, controlled and/or operated by Therapie Medical (US) Inc.

30. Therapieclinic.com/us is a commercial website that offers products and services for online sale that are available in the Therapie Clinics. The online Store allows the user to browse the various aesthetic and wellness experiences that are offered for sale, book services for a specific date and time, make purchases, and perform a variety of other functions.

31. Among the features offered by Therapieclinic.com/us are the following:

(a) learning about Store information including, allowing persons who wish to visit Therapie Clinics to learn their location, times of operation, and phone numbers;

(b) an online Store, allowing customers to learn about and purchase aesthetic and wellness experiences, make online bookings for services, and purchase skincare and beauty productgs, amongst other services; and

(c) learning about the company, learning about the experiences, learning about career opportunities, learning about pricing, and learning about promotions.

32. This case arises out of Therapie's policy and practice of denying the blind access to Therapieclinic.com/us, including the goods and services offered by Therapie Clinics through Therapieclinic.com/us. Due to Therapie's failure and refusal to remove access barriers to Therapieclinic.com/us, blind individuals have been and are being denied equal access to Therapie Clinics, as well as to the numerous goods, services and benefits offered to the public through Therapieclinic.com/us.

33. Therapie denies the blind access to goods, services and information made available through Therapieclinic.com/us by preventing them from freely navigating Therapieclinic.com/us.

34. Therapieclinic.com/us contains access barriers that prevent free and full use by Plaintiff and blind persons using keyboards and screen-reading software. These barriers are pervasive and include, but are not limited to: lack of alt-text on graphics, inaccessible drop-down menus, the lack of navigation links, the lack of adequate prompting and labeling, the denial of keyboard access, empty links that contain no text, redundant links where adjacent links go to the same URL address, and the requirement that transactions be performed solely with a mouse.

35. Alternative text ("Alt-text") is invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that a screen-reader can speak the alternative text while sighted users see the picture. Alt-text does not change the visual presentation except that it appears as a text pop-up when the mouse moves over the picture. There are many important pictures on Therapieclinic.com/us that lack a text equivalent. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics (screen-readers detect and vocalize alt-text to provide a description of the image to a blind computer user). As a result, Plaintiff and blind Therapieclinic.com/us customers are unable to determine what is on the website, browse the website or investigate THERAPIE Clinics' web pages and/or make purchases.

36. Therapieclinic.com/us also lacks prompting information and accommodations necessary to allow blind shoppers who use screen-readers to locate and accurately fill-out online forms. On a shopping site such as Therapieclinic.com/us, these forms include search fields to locate products and services, fields used to select type and quantity, fields to select time and date, and fields used to fill-out personal information, including address and credit card information.

Due to lack of adequate labeling, Plaintiff and blind customers cannot make bookings, purchases or inquiries as to Defendant's services and merchandise, nor can they enter their personal identification and financial information with confidence and security.

37. Specifically, when Plaintiff, using JAWS, attempted to make a purchase, she encountered the following problems:

- The word "us" is announced BEFORE the name of every element given focus. Plaintiff found this very confusing.
- Plaintiff was unable to utilize "skip to content" on any page of this website, making navigation extremely difficult and burdensome. Focus does not move to the main content when selected.
- Plaintiff was unable to access the Close (X) button and the arrow button in the 'region' banner at the top of the website. Both are announced as "unlabeled [number]" buttons, so Plaintiff did NOT know their purpose or destination.
- Plaintiff was unable to access any services or products offered for sale. The mouse over drop-down links that horizontally span the top of the homepage cannot be activated with a screen reader. When a sighted person hovers their mouse over the words LASER, INJECTABLES, SKIN, BODY, PRICING, and SHOP, a drop-down list of subcategories of services and merchandise appears and can be activated with the click of a mouse. However, Plaintiff and other blind persons who visit the website are unable to activate any of the links and cannot access any of the subcategories or any of the products that are sold on the website. This is a critical error.
- Plaintiff was unable to access the 'Account' link. The link is announced as "unlabeled 0 button," so Plaintiff did NOT know its purpose or destination.
- Plaintiff was unable to access the 'shopping cart' link. The link is announced as "unlabeled 8 button," so Plaintiff did NOT know its purpose or destination.
- Plaintiff was unable to access the arrow buttons for the 'Explore Our Treatments' carousel on the homepage. They are announced as "unlabeled," so Plaintiff did NOT know their purpose or destination.
- Plaintiff was unable to access the content of the four videos on the homepage. The 'Play' button is NOT accessible. Focus jumps from the link above the videos to the next link below them.
- Plaintiff was unable to Book any services on the website. INJECTABLES – BOTOX FOR WOMEN: (a) the 'Affordable Pricing' chart on this service page CANNOT be read with the screen reader. Navigation moves focus through the chart row by row, completely SKIPPING OVER the 'New Client Offer' column. There is NO correlation established between the prices announced in this column to their related row headings. (b) Plaintiff could NOT select a location for this service. The list of available locations which are displayed on the location pop-up is NOT accessible. The ONLY way to select a location

on this pop-up is by using a mouse. (c) Even if Plaintiff was able to select a location, she would NOT be able to select a provider. Selecting the 'Select Preferred Provider' button opens a 'Select Provider' pop-up which is NOT accessible. Focus then moves to the Close (X) button for the pop-up, which is announced as "unlabeled 1 button." Pressing the tab button one more time removes focus visibly from the screen. Focus does NOT appear anywhere on the page. HYDRAFACIAL: (a) Plaintiff was unable to select the 'Book a Consultation' or 'Buy a Package' buttons on this service page. (b) the 'Buy and Save' button on the service page opens an 'Advanced Skin Treatments' webpage with two package options for Hydrafacials. The 'Choose a Package' button next to each of the options opens a pop-up that is NOT accessible. Focus moves ONLY to the Close (X) button for the pop-up, which is unlabeled, and then disappears from the screen. None of the 'session' buttons on the pop-up are accessible, so the package CANNOT be added to the cart. This is a critical error.

- Plaintiff was unable to change the quantity of any product. The Plus (+) and Minus (-) buttons to adjust quantity are announced as "unlabeled [number] buttons." Plaintiff did NOT know the purpose or destination of these buttons. To make matters worse, there is NO verbal notification given if the quantity is changed.

Consequently, Plaintiff and blind visitors to the website are unable to complete a transaction.

38. On Therapieclinic.com/us, blind customers are not aware if the desired products have been added to the shopping cart because the screen-reader does not indicate the type of product or service. Therefore, blind customers are essentially prevented from purchasing any product on Therapieclinic.com/us.

39. Furthermore, Therapieclinic.com/us lacks accessible image maps. An image map is a function that combines multiple words and links into one single image. Visual details on this single image highlight different "hot spots" which, when clicked on, allow the user to jump to many different destinations within the website. For an image map to be accessible, it must contain alt-text for the various "hot spots." The image maps on Therapieclinic.com/us' menu page do not contain adequate alt-text and are therefore inaccessible to Plaintiff and the other blind individuals attempting to make a purchase. When Plaintiff tried to access the menu link in order to make a purchase, she was unable to access it completely.

40. Moreover, the lack of navigation links on Defendant's website makes attempting to navigate through Therapieclinic.com/us even more time consuming and confusing for Plaintiff and blind consumers.

41. Therapieclinic.com/us requires the use of a mouse to complete a transaction. Yet, it is a fundamental tenet of web accessibility that for a web page to be accessible to Plaintiff and blind people, it must be possible for the user to interact with the page using only the keyboard. Indeed, Plaintiff and blind users cannot use a mouse because manipulating the mouse is a visual activity of moving the mouse pointer from one visual spot on the page to another. Thus, Therapieclinic.com/us' inaccessible design, which requires the use of a mouse to complete a transaction, denies Plaintiff and blind customers the ability to independently navigate and/or make purchases on Therapieclinic.com/us.

42. Due to Therapieclinic.com/us' inaccessibility, Plaintiff and blind customers must in turn spend time, energy, and/or money to make their bookings and purchases at a Therapie Clinics. Some blind customers may require a driver to get to the Clinics or require assistance in navigating the Clinics. Unfortunately, Plaintiff could not even locate a Store location on the website. By contrast, if Therapieclinic.com/us was accessible, a blind person could independently investigate products and programs and make purchases and/or bookings via the Internet as sighted individuals can and do. According to WCAG 2.0 Guideline 2.4.1, a mechanism is necessary to bypass blocks of content that are repeated on multiple webpages because requiring users to extensively tab before reaching the main content is an unacceptable barrier to accessing the website. Plaintiff must tab through every navigation bar option and footer on Defendant's website in an attempt to reach the desired service. Thus, Therapieclinic.com/us' inaccessible design, which requires the use of a mouse to complete a

transaction, denies Plaintiff and blind customers the ability to independently make purchases on Therapieclinic.com/us.

43. Therapieclinic.com/us thus contains access barriers which deny the full and equal access to Plaintiff, who would otherwise use Therapieclinic.com/us and who would otherwise be able to fully and equally enjoy the benefits and services of Therapie Clinics in New York State and throughout the United States.

44. Plaintiff, Rasheta Bunting, has made numerous attempts to complete a purchase on Therapieclinic.com/us, most recently on December 3, 2024, December 7, 2024 and December 16, 2023 but was unable to do so independently because of the many access barriers on Defendant's website.  These access barriers have caused Therapieclinic.com/us to be inaccessible to, and not independently usable by, blind and visually-impaired persons.  Amongst other access barriers experienced, Plaintiff was unable to book the Botox Treatment for herself for December 30, 2024 at the 12 West 19th Street, New York,  NY location, buy a package of the Hydrafacial treatments, and purchase the Antioxidant Gel Cleanser.

45. Moreover, if Defendant removes the access barriers that currently exist on the Website, Plaintiff will definitely visit the Website in the future to inquire about the many aesthetics and wellness experiences available for purchase on the website. Just because you are blind doesn't mean that you don't want to look and feel good. Plaintiff cares deeply about her physical and mental wellbeing, and enjoys taking trips to the clinic to relax and unwind. With the Holidays approaching, Plaintiff wanted to treat herself to a Botox treatment in order to reduce the appearance of lines and to product a look that is fresh, more youthful, and natural. As Plaintiff matures, she has always wanted to try a Botox treatment. She also wanted to treat herself and her daughters to a "girls clinic day" with facials, amongst other clinic activities. The Hydrafacial sounded like a good option for rejuvenating the skin. She searched online for the trendiest clinics

13

in New York and Defendant's clinics topped the list of recommendations. Plaintiff liked that Defendant's clinics offer a range of treatments aimed at improving skin health, appearance, and overall confidence. She was impressed to learn that they are the number one clinic in Europe, provide expert medical professionals using cutting-edge technology. Plaintiff mostly liked that Defendant offers its services at affordable prices, offers payment plans, and offers promotions. Consequently, Plaintiff was excited to book services on Defendant's website. Unfortunately, Defendant's website was not accessible and continues to be inaccessible to Plaintiff and other blind screen reader users. If the website was accessible to the blind, Plaintiff will be able to visit the website and book a wide range of services and make purchases today and in the future. Defendant has bought similar services and products from other (accessible) online vendors in the past. However, Defendant's brand is well known, with clinics located throughout the world, and since Defendant's services are of superior quality and are affordable, Plaintiff would continue to make purchases of clinic experiences on Defendant's website if it was accessible. She is hoping to receive Botox treatment on a regular basis in the future. Unlike a brick-and-mortar facility, a website is instantly accessible at any moment, and, thus, an inability to make a purchase can only be attributed to access barriers (whereas for brick-and-mortal locations it can be attributed to proximity, travel time, etc.). *See Sanchez v. Nutco, Inc*., 10-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247, at *7 (S.D.N.Y. Mar. 22, 2022) (citing *Quezada v U.S. Wings, Inc*., 20 Civ. 10707 (ER), 2021 U.S. Dist. LEXIS 234057, at *4 (S.D.N.Y. Dec. 7 2021)). Determining whether an ADA website accessibility complaint properly allege whether plaintiff lives in "close proximity" to a specific location makes no sense when goods can be browsed, bought, and delivered to Plaintiff's home through a website. Likewise, factual considerations of an intent to return regarding a physical location, such as how often the plaintiff walks by the location, or how often they enter the facility, are not applicable. *Cf. Lopez v. Arby Franchisor, LLC*, 19-CV-10074

14

(VSB) 2021 U.S. Dist. LEXIS 43838. at *10 (S.D.N.Y. March 8, 2021). Plaintiff made numerous attempts to make purchases on the website during October, November, and December 2024 without success and will definitely make bookings and purchases of additional services and products which are sold on the website and which currently cannot be purchased by blind persons.

46. As described above, Plaintiff has actual knowledge of the fact that Defendant's website, Therapieclinic.com/us, contains access barriers causing the website to be inaccessible, and not independently usable by, blind and visually-impaired persons.

47. These barriers to access have denied Plaintiff full and equal access to, and enjoyment of, the goods, benefits and services of Therapieclinic.com/us and the Therapie Clinics.

48. Defendant engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

(a) constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

(b) constructed and maintained a website that is not sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

49. Defendant utilizes standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others.

50. Because of Defendant's denial of full and equal access to, and enjoyment of, the goods, benefits and services of Therapieclinic.com/us and Therapie Clinics, Plaintiff and the

class have suffered an injury-in-fact which is concrete and particularized and actual and is a direct result of defendant's conduct.

## CLASS ACTION ALLEGATIONS

51. Plaintiff, on behalf of herself and all others similarly situated, seeks certification of the following nationwide class pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure: "all legally blind individuals in the United States who have attempted to access Therapieclinic.com/us and as a result have been denied access to the enjoyment of goods and services offered in the Therapie Clinics, during the relevant statutory period."

52. Plaintiff seeks certification of the following New York subclass pursuant to Fed.R.Civ.P. 23(a), 23(b)(2), and, alternatively, 23(b)(3): "all legally blind individuals in New York State who have attempted to access Therapieclinic.com/us and as a result have been denied access to the enjoyment of goods and services offered in the Therapie Clinics, during the relevant statutory period."

53. There are hundreds of thousands of visually-impaired persons in New York State. There are approximately 8.1 million people in the United States who are visually-impaired. *Id*. Thus, the persons in the class are so numerous that joinder of all such persons is impractical and the disposition of their claims in a class action is a benefit to the parties and to the Court.

54. This case arises out of Defendant's policy and practice of maintaining an inaccessible website denying blind persons access to the goods and services of Therapieclinic.com/us and the Therapie Clinics. Due to Defendant's policy and practice of failing to remove access barriers, blind persons have been and are being denied full and equal access to independently browse, select and shop on Therapieclinic.com/us and by extension the goods and services offered through Defendant's website to Therapie Clinics.

55. There are common questions of law and fact common to the class, including without limitation, the following:

(a) Whether Therapieclinic.com/us is a "public accommodation" under the ADA;

(b) Whether Therapieclinic.com/us is a "place or provider of public accommodation" under the laws of New York;

(c) Whether Defendant, through its website, Therapieclinic.com/us, denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities in violation of the ADA; and

(d) Whether Defendant, through its website, Therapieclinic.com/us, denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities in violation of the law of New York.

56. The claims of the named Plaintiff are typical of those of the class. The class, similar to the Plaintiff, is severely visually-impaired or otherwise blind, and claims Therapie has violated the ADA, and/or the laws of New York by failing to update or remove access barriers on their website, Therapieclinic.com/us, so it can be independently accessible to the class of people who are legally blind.

57. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class because Plaintiff has retained and is represented by counsel competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the members of the class. Class certification of the claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

58. Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to Class members clearly predominate over questions affecting only individual class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

59. Judicial economy will be served by maintenance of this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

60. References to Plaintiff shall be deemed to include the named Plaintiff and each member of the class, unless otherwise indicated.

### FIRST CAUSE OF ACTION
(Violation of 42 U.S.C. §§ 12181 *et seq*. – Title III of the Americans with Disabilities Act)

61. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 59 of this Complaint as though set forth at length herein.

62. Title III of the American with Disabilities Act of 1990, 42 U.S.C. § 12182(a) provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  Title III also prohibits an entity from "[u]tilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability."  42 U.S.C. § 12181(b)(2)(D)(I).

63. The THERAPIE Clinics located in New York State are a sales establishment and public accommodation within the definition of 42 U.S.C. §§ 12181(7)(E).

18

Therapieclinic.com/us is a service, privilege or advantage of Therapie Clinics.

Therapieclinic.com/us is a service that is by and integrated with the Clinics.

64. Defendant is subject to Title III of the ADA because it owns and operates the THERAPIE Clinics.

65. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

66. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

67. Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

68. In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter

the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

69. There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired. These guidelines have been followed by other business entities in making their websites accessible, including but not limited to ensuring adequate prompting and accessible alt-text. Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

70. The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 *et seq*., and the regulations promulgated thereunder. Patrons of THERAPIE Clinics who are blind have been denied full and equal access to Therapieclinic.com/us, have not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

71. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

72. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of Therapieclinic.com/us and Therapie Clinics in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq*. and/or its implementing regulations.

73. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the proposed class and subclass will continue to suffer irreparable harm.

74. The actions of Defendant were and are in violation of the ADA, and therefore Plaintiff invokes his statutory right to injunctive relief to remedy the discrimination.

75. Plaintiff is also entitled to reasonable attorneys' fees and costs.

76. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

### SECOND CAUSE OF ACTION
(Violation of New York State Human Rights Law, N.Y. Exec. Law
Article 15 (Executive Law § 292 *et seq.*))

77. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 75 of this Complaint as though set forth at length herein.

78. N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof.".

79. The Therapie Clinics located in New York State are a sales establishment and public accommodation within the definition of N.Y. Exec. Law § 292(9).  Therapieclinic.com/us is a service, privilege or advantage of Therapie Clinics.  Therapieclinic.com/us is a service that is by and integrated with the Clinics.

80. Defendant is subject to the New York Human Rights Law because it owns and operates the THERAPIE Clinics and Therapieclinic.com/us.  Defendant is a person within the meaning of N.Y. Exec. Law. § 292(1).

81. Defendant is violating N.Y. Exec. Law § 296(2)(a) in refusing to update or remove access barriers to Therapieclinic.com/us, causing Therapieclinic.com/us and the services integrated with THERAPIE Clinics to be completely inaccessible to the blind.  This

inaccessibility denies blind patrons the full and equal access to the facilities, goods and services that Defendant makes available to the non-disabled public.

82. Specifically, under N.Y. Exec. Law § unlawful discriminatory practice includes, among other things, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations."

83. In addition, under N.Y. Exec. Law § 296(2)(c)(II), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

84. There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired.  These guidelines have been followed by other business entities in making their website accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed by using a keyboard.  Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

85. Defendant's actions constitute willful intentional discrimination against the class on the basis of a disability in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296(2) in that Defendant has:

(a) constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

(b) constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

86. Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct.  These violations are ongoing.

87. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of Therapieclinic.com/us and Therapie Clinics under N.Y. Exec. Law § 296(2) *et seq*. and/or its implementing regulations.  Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the class will continue to suffer irreparable harm.

88. The actions of Defendant were and are in violation of the New York State Human Rights Law and therefore Plaintiff invokes her right to injunctive relief to remedy the discrimination.

89. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines pursuant to N.Y. Exec. Law § 297(4)(c) *et seq*. for each and every offense.

90. Plaintiff is also entitled to reasonable attorneys' fees and costs.

91. Pursuant to N.Y. Exec. Law § 297 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

**THIRD CAUSE OF ACTION**

(Violation of New York State Civil Rights Law, NY CLS Civ R,
Article 4 (CLS Civ R § 40 *et seq.*))

92. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 90 of this Complaint as though set forth at length herein.

93. Plaintiff served notice thereof upon the attorney general as required by N.Y. Civil Rights Law § 41.

94. N.Y. Civil Rights Law § 40 provides that "all persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities, and privileges of any places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No persons, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any such place shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities and privileges thereof . . ."

95. N.Y. Civil Rights Law § 40-c(2) provides that "no person because of . . . disability, as such term is defined in section two hundred ninety-two of executive law, be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision."

96. The Therapie Clinics located in New York State are a sales establishment and public accommodation within the definition of N.Y. Civil Rights Law § 40-c(2). Therapieclinic.com/us is a service, privilege or advantage of the Therapie Clinics. Therapieclinic.com/us is a service that is by and integrated with the Clinics.

24

97. Defendant is subject to New York Civil Rights Law because it owns and operates THERAPIE Clinics and Therapieclinic.com/us. Defendant is a person within the meaning of N.Y. Civil Law § 40-c(2).

98. Defendant is violating N.Y. Civil Rights Law § 40-c(2) in refusing to update or remove access barriers to Therapieclinic.com/us, causing Therapieclinic.com/us and the services integrated with the Therapie Clinics to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that Defendant makes available to the non-disabled public.

99. There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired. These guidelines have been followed by other business entities in making their website accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed by using a keyboard. Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

100. In addition, N.Y. Civil Rights Law § 41 states that "any corporation which shall violate any of the provisions of sections forty, forty-a, forty-b or forty two . . . shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby . . ."

101. Specifically, under N.Y. Civil Rights Law § 40-d, "any person who shall violate any of the provisions of the foregoing section, or subdivision three of section 240.30 or section 240.31 of the penal law, or who shall aid or incite the violation of any of said provisions shall for each and every violation thereof be liable to a penalty of not less than one hundred

25

dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any court of competent jurisdiction in the county in which the defendant shall reside . . ."

102. Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct.  These violations are ongoing.

103. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class on the basis of disability are being directly indirectly refused, withheld from, or denied the accommodations, advantages, facilities and privileges thereof in § 40 *et seq*. and/or its implementing regulations.

104. Plaintiff is entitled to compensatory damages of five hundred dollars per instance, as well as civil penalties and fines pursuant to N.Y. Civil Rights Law § 40 *et seq*. for each and every offense.

### FOURTH CAUSE OF ACTION
(Violation of New York City Human Rights Law,
N.Y.C. Administrative Code § 8-102, *et seq*.)

105. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 103 of this Complaint as though set forth at length herein.

106. N.Y.C. Administrative Code § 8-107(4)(a) provides that "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of . . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person, any of the accommodations, advantages, facilities or privileges thereof."

107. Therapie Clinics located in New York State are a sales establishment and public accommodation within the definition of N.Y.C. Administrative Code § 8-102(9). Therapieclinic.com/us is a service, privilege or advantage of the Therapie Clinics. Therapieclinic.com/us is a service that is by and integrated with the Clinics.

108. Defendant is subject to City Law because it owns and operates the THERAPIE Clinics and Therapieclinic.com/us.  Defendant is a person within the meaning of N.Y.C. Administrative Code § 8-102(1).

109. Defendant is violating N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Therapieclinic.com/us, causing Therapieclinic.com/us and the services integrated with the Therapie Clinics to be completely inaccessible to the blind.  This inaccessibility denies blind patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public.  Specifically, Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq*.] from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity."  N.Y.C. Administrative Code § 8-107(15)(a).

110. Defendant's actions constitute willful intentional discrimination against the class on the basis of a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a) in that Defendant has:

(a) constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

(b) constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

111. Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct.  These violations are ongoing.

112. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of Therapieclinic.com/us and the Therapie Clinics under N.Y.C. Administrative Code § 8-107(4)(a) and/or its implementing regulations.  Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the class will continue to suffer irreparable harm.

113. The actions of Defendant were and are in violation of City law and therefore Plaintiff invokes his right to injunctive relief to remedy the discrimination.

114. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense.

115. Plaintiff is also entitled to reasonable attorneys' fees and costs.

116. Pursuant to N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION
(Declaratory Relief)

117. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 115 of this Complaint as though set forth at length herein.

118. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that Therapieclinic.com/us contains access barriers denying blind customers the full and equal access to the goods, services and facilities of Therapieclinic.com/us and by extension Therapie Clinics, which Therapie owns, operates and/or controls, fails to comply with applicable laws including,

28

but not limited to, Title III of the American with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*., N.Y. Exec. Law § 296, *et seq*., and N.Y.C. Administrative Code § 8-107, *et seq*. prohibiting discrimination against the blind.

119. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully demands judgment in favor of Plaintiff and the class and against the Defendants as follows:

a)  A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*., N.Y. Exec. Law § 296, *et seq*., and N.Y.C. Administrative Code § 8-107, *et seq*., and the laws of New York;

b)  A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its website, Therapieclinic.com/us, into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that Therapieclinic.com/us is readily accessible to and usable by blind individuals;

c)  A declaration that Defendant owns, maintains and/or operates its website, Therapieclinic.com/us, in a manner which discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*., N.Y. Exec. Law § 296, *et seq*., and N.Y.C. Administrative Code § 8-107, *et seq*., and the laws of New York;

d)  An order certifying this case as a class action under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and her attorneys as Class Counsel;

e)   Compensatory damages in an amount to be determined by proof, including all applicable

statutory damages and fines, to Plaintiff and the proposed class for violations of their civil

rights under New York State Human Rights Law and City Law;

f)   Plaintiff's reasonable attorneys' fees, expenses, and costs of suit as provided by state and

federal law;

g)   For pre- and post-judgment interest to the extent permitted by law; and

h)   For such other and further relief which this court deems just and proper.

Dated: Scarsdale, New York
      January 13, 2025

                      SHAKED LAW GROUP, P.C.
                      Attorneys for Plaintiff

             By:*/s/Dan Shaked*_____
                Dan Shaked, Esq.
                14 Harwood Court, Suite 415
                Scarsdale, NY 10583
                Tel. (917) 373-9128
                e-mail: ShakedLawGroup@Gmail.com